FUTUREVISION, INC., Plaintiff-Appellant, v. STEVE DAHL *et al.*, Defendants-Appellees.

First District (1st Division)   No. 84—1057

Opinion filed December 16, 1985.

Lance Haddix, of Chicago, for appellant.

E. Leonard Rubin, of Epton, Mullin & Druth, Ltd., of Chicago, for appellees Steve Dahl and Steve Dahl Company.

William Carlisle Herbert and Joseph F. Griffin, both of Hopkins & Sutter, of Chicago, for appellees Focus Broadcasting Company, Steven Pruett, and John Roach.

JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from an order granting summary judgment in favor of defendants in a five-count suit brought by plaintiff, Futurevision, Inc. (Futurevision), for specific performance, breach of contract, breach of duty to act in good faith, tortious interference with a contract and interference with a prospective business advantage. The first three counts of plaintiff's amended complaint were addressed to defendants, Steve Dahl and Steve Dahl Company (the primary defendants), while the latter two counts were directed at Focus Broadcasting Company, Steven Pruett, John Roach and William Giesler (the secondary defendants). The primary and secondary defendants each filed a motion to dismiss plaintiff's amended complaint and for summary judgment. The trial court granted summary judgment for all defendants. On appeal, plaintiff contends that (1) there were issues of material fact which precluded the entry of sum-

mary judgment; and (2) motions to dismiss and for summary judgment may not be combined in the same pleading.

Plaintiff, Futurevision, produces and markets television programs. On June 3, 1982, Dahl and Futurevision entered into a written agreement (the Dahl-Futurevision agreement) whereby, in consideration of a payment of $10,000 and its production of a videotape of Dahl's song, "Falklands," Futurevision obtained a one-year right of first refusal to produce or executive produce any Dahl television or video show. The Dahl-Futurevision agreement also provided that Dahl would use his "best efforts" to create and generate additional videotape projects for Futurevision's involvement.

On July 9, 1982, Futurevision executives, including William Horberg, president of Futurevision, met with Dahl to discuss the development of a television talk show. Dahl proposed that Futurevision direct their efforts towards development of a situation comedy show to be title "Stuckey's Show." At a second meeting on July 15, 1982, Dahl rejected a proposal by Futurevision that a Steve Dahl talk show be done instead of the "Stuckey's Show."

On November 8, 1982, John Roach, acting on behalf of Dahl, visited Horberg and informed him that Dahl wanted to do a talk show with Steven Pruett. Roach stated that Dahl wanted Futurevision to be involved in Steve Dahl television specials and in the "Stuckey's Show," but did not want Futurevision to participate in the talk show project. Horberg told Roach that if Dahl proceeded to do a talk show with Pruett, such actions would be in violation of the right-of-first-refusal provision of the Dahl-Futurevision agreement. Roach then agreed to arrange a meeting between Horberg and Pruett.

On November 12, 1982, Horberg met with Pruett and Roach to discuss the proposal for a Dahl talk show. Pruett told Horberg that Dahl wanted to do the talk show with Pruett and that Dahl intended to wait out the option period if Futurevision demanded to do the talk show pursuant to the Dahl-Futurevision agreement. Pruett stated that Futurevision could not participate in the talk show project because Roach was to be the producer and Pruett was to be the executive producer. Horberg requested that a written proposal of Pruett's offer regarding the talk show be sent to Futurevision pursuant to the right-of-first-refusal provision contained in the Dahl-Futurevision agreement. Pruett and Roach agreed to send something in writing to Futurevision within the next week. No written proposal concerning the Dahl talk show, however, was submitted to Futurevision at that time.

During the period September 1982, through December 1982,

Horberg discussed the development of the "Stuckey's Show" with representatives of the Spectrum pay television service. Spectrum indicated its interest in acquiring the "Stuckey's Show" but expressed concern about who actually represented Dahl. At a meeting with Spectrum representatives, Horberg stated he saw a Spectrum intra-office memorandum which stated that Pruett claimed to have the exclusive television rights to Dahl.

On December 9, 1982, an article appeared in the Chicago Sun-Times which stated that Dahl was planning to launch a new television show and that Roach was the "front-runner to become the producer-director" of the show.

On December 16, 1982, plaintiff filed its original complaint alleging breach by the primary defendants of the Dahl-Futurevision agreement and a breach of the duty to act in good faith and deal fairly and seeking specific performance. The complaint further alleged tortious interference with a contract and interference with a prospective business advantage against the secondary defendants. The primary and secondary defendants each filed a motion to dismiss, or in the alternative, for summary judgment. The motions to dismiss were granted.

On February 14, 1983, Horberg received a copy of a written offer made by Focus Broadcasting Company (Focus) to Steve Dahl Company, Inc., regarding the production of a Steve Dahl television show. The offer specifically provided that Focus would produce the talk show and included general terms for the responsibilities or duties of a producer. Upon receiving a copy of the offer, Horbert's attorneys informed Dahl that the offer from Focus circumvented the Dahl-Futurevision agreement since it lacked any provisions for a producer or executive producer and that it might constitute a breach of the Dahl-Futurevision agreement.

On April 4, 1983, Dahl entered into a written agreement with Focus (the Dahl-Focus agreement) wherein Focus was granted the right to produce a talk show featuring Steve Dahl. The Dahl-Focus agreement was identical in its terms to the copy of the offer forwarded by Dahl to Futurevision on February 14, 1983. Thereafter, the Dahl Talk Show was aired on television from May 16, 1983, to June 13, 1983.

On November 9, 1983, plaintiff filed its amended complaint. The same five causes of action were alleged as in the original complaint. An allegation was added that on February 14, 1983, plaintiff had received a copy of an offer by Focus to Dahl regarding production of a talk show. Plaintiff alleged that the offer was a "sham" designed to

relieve Dahl from performing his duties under the Dahl-Futurevision agreement. Once again, the primary and secondary defendants each filed a motion to dismiss, or in the alternative, for summary judgment. The motions for summary judgment were granted.

■■ Plaintiff initially contends that material issues of fact exist which precluded the trial court's entry of summary judgment. Summary judgment shall be granted if the pleadings, depositions and admission on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005; *Dragovan v. City of Crest Hill* (1983), 115 Ill. App. 3d 999, 451 N.E.2d 22.) Pleadings are to be liberally construed, but such liberal constructions do "not remedy the failure of a complaint to state a cause of action." (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 427, 430 N.E.2d 976, 985-86.) It is not enough to allege a contract. A breach of some duty imposed by the contract or by law must be shown or the action must fail.

In regard to the primary defendants, Steve Dahl and Steve Dahl Company, Inc., the question before the court was whether, as a matter of law, based on all the pleadings and affidavits, the defendants breached any contractual duties to plaintiff. The amended complaint alleged that Dahl violated the right-of-first-refusal provision of the Dahl-Futurevision contract by entering into the Dahl-Focus agreement whereby Focus was granted the right to produce a talk show featuring Steve Dahl. The trial court had before it the affidavit of Dahl wherein Dahl stated that on February 14, 1983, he submitted the offer which he received from Focus to Futurevision as required by the Dahl-Futurevision agreement. Only after Futurevision neglected to exercise its right-of-first-refusal did Dahl accept the offer.

Plaintiff contends that the offer was a "sham" since it did not include any provision for the responsibilities or duties of a producer or an executive producer. The Dahl-Futurevision agreement, however, named Focus as producer of the Dahl talk show. Further, the extent of Dahl's obligation under the agreement was to advise plaintiff in writing of receipt of an offer so that the plaintiff could decide whether to exercise its right and match the offer. Dahl was not obligated under the terms of the Dahl-Futurevision agreement to deal exclusively with Futurevision. The agreement only provided that Futurevision was granted a right-of-first-refusal for production offers received by Dahl. Our review of the record reveals that the primary defendants met their obligations under the terms of the agreement when they forwarded the Focus offer to Futurevision. We find no

breach of any contractual duty and, therefore, summary judgment was appropriate.

Against the secondary defendants, plaintiff alleged actions for both tortious interference with a contract and interference with a prospective business advantage. From our review of the amended complaint, we do not believe plaintiff stated a cause of action for either.

■■ ■ A necessary prerequisite to the maintenance of an action for tortious interference with a contract is defendant's intentional and unjustified inducement of a breach of the contract. (*Scheduling Corp. of America v. Massello* (1983), 119 Ill. App. 3d 355, 456 N.E.2d 298; *Mineral Resources, Inc. v. Classic Coal Corp.* (1983), 115 Ill. App. 3d 114, 450 N.E.2d 379.) In the instant case, the amended complaint alleged that the breach of contract occurred when Futurevision was not granted its right of first refusal on all proposals for video projects by Dahl. Plaintiff's amended complaint further alleged that the offer received by Dahl from Focus regarding the production of a talk show was a "sham" since it lacked any reference to the role of a producer or executive producer. Our review of the record indicates that the Dahl-Focus agreement specifically named Focus as producer of the Dahl talk show and generally described the production responsibilities of Focus. Under the terms of the Dahl-Futurevision agreement, Futurevision's right of first refusal was limited to the opportunity to produce the talk show "on the same terms and conditions" as those proposed by Focus. After Dahl forwarded to Futurevision a copy of Focus' offer to Dahl, Futurevision declined to match Focus' offer. Since Futurevision was given an opportunity to exercise its right of first refusal, no breach of the agreement occurred. Plaintiffs have failed, therefore, to state a cause of action for tortious interference with a contract against defendants.

■■ Similarly, we do not find that plaintiffs have properly stated a cause of action for interference with a prospective business advantage. Plaintiff's complaint alleges that the secondary defendants interfered with Futurevision's negotiations with Spectrum to acquire the "Stuckey's Show." A necessary element to state a cause of action for interference with a prospective business advantage is defendant's knowledge of a reasonable business expectancy and defendant's intentional interference which prevents the expectancy from ripening into a valid business relationship. (*Nemeth v. Banhalmi* (1981), 99 Ill. App. 3d 493, 425 N.E.2d 1187; *Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98.) Plain-

tiff's amended complaint fails to contain an allegation of knowledge by the secondary defendants of Futurevision's negotiations with Spectrum concerning the "Stuckey's Show" or that they intentionally interfered with that relationship. Absent these allegations plaintiff cannot maintain an action against the secondary defendants for interference with a prospective business advantage.

Plaintiff also maintains that the defendants improperly combined a motion to dismiss with a motion for summary judgment. Plaintiffs cite *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605, where the court criticized the procedure of simultaneously filing motions to dismiss and for summary judgment. While it is true that courts have disapproved of the practice of combining these two motions, they have also considered such motions on their merits, in the interests of judicial economy. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605; *Doyle v. Shlensky* (1983), 120 Ill. App. 3d 807, 458 N.E.2d 1120; *Lerner v. Zipperman* (1982), 104 Ill. App. 3d 1098, 433 N.E.2d 1072.) A reading of these cases indicates that such a combined motion is not grounds for reversal absent a showing of prejudice. (See *Kubik v. CNA Financial Corp.* (1981), 96 Ill. App. 3d 715, 422 N.E.2d 1.) From our review of the evidence here, we believe there was sufficient evidence from the pleadings and affidavits for the trial court to determine as a matter of law that there was no breach by these defendants of any duties owed plaintiff. We, therefore, find that the form of the motion was not prejudicial to plaintiff and that the grant of summary judgment was proper.

For the reasons stated, summary judgment is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and O'CONNOR, JJ., concur.