ROBERT HARRELL *et al.*, Plaintiffs-Appellants, v. MONTGOMERY WARD & COMPANY, INC., Defendant-Appellee.

First District (4th Division)   No. 1—88—1592

Opinion filed September 28, 1989.

Charles Barnhill, Jr., Terri Finesmith Horwich, and George J. Galland, Jr., all of Davis, Barnhill & Galland, of Chicago, for appellants.

Jeffrey Torf, of Montgomery Ward & Co., Inc., of Chicago, and N.

Thompson Powers, Ronald S. Cooper, and Lisa B. Dickieson, all of Steptoe & Johnson, of Washington, D.C., for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Robert Harrell,[1] brought this action alleging that the defendant, Montgomery Ward & Co. (Ward), discharged him from its employ in violation of the terms of certain policy statements issued by Ward. The trial court granted Ward's motion to dismiss the complaint for failure to state a cause of action (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), and Harrell has appealed. The issue on appeal is whether the allegations of the complaint sufficiently state a claim for breach of an employment contract pursuant to *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, which held that an employer's policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present.

Harrell was an upper-level management employee of Ward until the termination of his employment in 1981. As such, he supervised other management employees. Harrell's amended complaint contained the following allegations. During the course of his employment, Ward promulgated a personnel manual which it updated and supplemented at various times with additional policy statements. Harrell bases his breach of contract claim upon statements contained in three documents: a chapter in the 1981 personnel manual entitled "Types of Separation"; a supplemental policy entitled "Employee Probation/Termination Procedure" (Probation Procedure); and a special program called the "Voluntary Separation Program" (VSP).

Briefly, the "Types of Separation" chapter in the personnel manual described several ways in which an employee could be separated from his employment at Ward, including resignation, layoff, discharge, retirement, disability, death and deactivation. Under the heading "Discharges" appeared the statement that "[a]n employee is discharged when [his] conduct or actions are determined to be detrimental to the best interests of the Company." This statement was followed by a section which listed the following reasons for discharge: attendance, performance, cause and "Discharge Other." Further details regarding the manual will be provided later in connection with our discussion of the issues.

---

[1]Harrell is the sole plaintiff involved in this appeal. The other plaintiffs have settled their claims with Ward and have been accordingly dismissed.

The probation procedure, the second document upon which Harrell relies, was disseminated to all "Supervisors of Management (Ledger) Employees" in August of 1981. It outlined a specific and detailed procedure to correct significant performance deficiencies and stated that the procedure "must be taken" with any employee "rated 'MM+' or lower." The procedure essentially consisted of probation and counseling followed by termination of employment where rehabilitation was not achieved.

The VSP was a special program targeted at top-level management employees. Through this program, Ward offered separation pay and other benefits in exchange for the employee's voluntary separation from employment. The letter accompanying the VSP offer stated that "[a]s the title implies, your participation is voluntary *** [s]ince the program is voluntary, you do have the right to accept or reject the offer." Attached to the letter was "an application form to accept or reject the Voluntary Separation Program offer."

The plaintiff alleged that these three policy statements were circulated to him, that he reasonably believed that they governed the circumstances under which he could be separated from employment and that he accepted the "offer" formed by the policy statements by continuing to work after learning of their existence. In September of 1981, Ward attempted to coerce Harrell into resigning by defaming his business reputation, indicating to him that he was not wanted and searching for his successor while he intended to remain at Ward. Harrell alleged that these actions caused him to believe that he was being forced to resign and that he was required to accept participation in the VSP before Ward would pay him the benefits which he was entitled.

Harrell further alleged that the VSP document was a "sham," and that his termination violated the terms of the personnel manual, the probation procedure and the VSP.

The sole question before us is whether the allegations of Harrell's complaint are sufficient to state a claim for breach of an employment contract.

■ The complaint was dismissed pursuant to a motion filed under section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). For purposes of a section 2—615 motion to dismiss, all facts well pleaded must be taken as true and interpreted in the light most favorable to the plaintiff. (*Free v. Holy Cross Hospital* (1985), 153 Ill. App. 3d 45, 49, 505 N.E.2d 1188.) A complaint is properly dismissed for failure to state a cause of action only where it appears that no set of facts can be proved which would entitle the plaintiff to relief. *Torres v. Amoco Corp.* (1989), 186 Ill. App. 3d 135.

■ Under Illinois law, an employment relationship without a fixed duration is terminable at will for any reason or no reason at all absent a violation of clearly mandated public policy. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Bennett v. Evanston Hospital* (1989), 184 Ill. App. 3d 1030, 540 N.E.2d 979.) In *Duldulao v. Saint Mary of Nazareth Hospital* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, the Illinois Supreme Court interpreted the general "employment-at-will rule" as a rule of construction which mandates a presumption that a hiring without a fixed term is at will. This presumption can be overcome by demonstrating that the parties contracted otherwise using the traditional requirements of contract formation. As stated by the court:

"[W]e hold that an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." *Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.

We will first address Harrell's claim that he was terminated from his employment in violation of the policy statements contained in the 1981 personnel manual. Essentially, Harrell argues that the sentence in the manual stating "[a]n employee is discharged when [his] conduct or actions are determined to be detrimental to the best interests of the Company" constituted a clear promise which would lead a reasonable employee to conclude that Ward was making an offer to discharge employees only for some specific cause, such as poor performance or misfeasance. Harrell alleged that he accepted the offer by continuing to work and that Ward breached the contract by terminating him without cause. Underlying this argument is Harrell's allegation that his participation in the VSP was a sham and that Ward's actions in effect amounted to a constructive discharge.

■ For a policy statement to create contractual rights under *Duldulao*, the first requirement is that the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Although Har-

rell contends that the existence of such a promise is a question of fact, the courts which have considered this issue have held that it is a threshold question of law to be determined by the court. (*Hunt v. IBM Mid America Employees Federal Credit Union* (Minn. 1986), 384 N.W.2d 853, 856.) This is in line with Illinois law stating that the provisions of a written instrument are to be interpreted by the court. *Northern Illinois Construction Co. v. Zale* (1985), 136 Ill. App. 3d 822, 824, 483 N.E.2d 1013.

The plaintiff has not cited and we have not found any case in which the simple definition of a term, without more, has been held sufficient to constitute a clear promise as required by *Duldulao*. In the *Duldulao* case, the employees were given a handbook which stated that the policies contained therein were "designed to clarify your rights and duties as employees." (*Duldulao*, 115 Ill. 2d at 486, 505 N.E.2d at 316.) The handbook set out a disciplinary procedure, then stated that permanent employees "*are never* dismissed without prior written admonitions and/or an investigation that has been properly documented," that "three warning notices within a twelve-month period *are required* before an employee is dismissed," and that "termination contemplated by the hospital *cannot occur* without proper notice and investigation." (Emphasis in original.) (*Duldulao*, 115 Ill. 2d at 491, 505 N.E.2d at 318.) The court concluded that the above-quoted language was sufficient to allow an employee to reasonably believe that the disciplinary procedure was part of the employer's offer. Relying upon *Duldulao*, the court in *Free v. Holy Cross Hospital* (1985), 153 Ill. App. 3d 45, 505 N.E.2d 1188, held that the allegation that an employee manual included a system of progressive discipline and a provision that employees could be discharged only for "just cause" was sufficient to survive a motion to dismiss for failure to state a cause of action.

Another example of a policy statement containing language sufficient to constitute an offer is contained in *Pine River State Bank v. Mettille* (Minn. 1983), 333 N.W.2d 622, the case relied upon by the *Duldulao* court. The employee handbook in *Pine River* contained a statement that " '[i]f an employee has violated a company policy, the following procedure will apply' " (333 N.W.2d at 626 n.3.), followed by a step-by-step process of progressive discipline. The handbook also stated that " '[i]n no instance will a person be discharged from employment without a review of the facts by the Executive Officer.' " (*Pine River*, 333 N.W.2d at 626 n.3.) The *Pine River* court held that by this language the employer made a specific offer to restrict its freedom to terminate the employee at will in exchange for the employee's contin-

ued labor. Similarly, in *Lewis v. Equitable Life Assurance Society* (Minn. 1986), 389 N.W.2d 876, 880, n.1, the court found that language stating " 'no employee will be discharged without' " following certain procedures limited the employer's right to freely dismiss its employees and was sufficient to constitute an offer.

■ In contrast to the above-cited cases, general statements of company policy or procedures which are discretionary in nature have been held too indefinite to constitute a clear promise which could reasonably be interpreted as an offer. See *Torres v. Amoco Corp.* (1989), 186 Ill. App. 3d 135, 136-37 (statements such as "professional growth and advancements are a reward for good performance" and "how well you do your job is the final factor in determining how much you earn" were too indefinite to constitute a promise); see also *Koch v. Illinois Power Co.* (1988), 175 Ill. App. 3d 248, 529 N.E.2d 281 (section entitled "Guidelines for Discipline" which suggested procedures which could be used at the discretion of the supervisor was not sufficient to constitute an offer).

In the case at bar, the language relied upon by Harrell appears in a chapter of the 1981 personnel manual entitled "Separations." The "Types of Separations" are listed as resignation, layoff, discharge, retirement, disability, death and deactivation. Next to each type of separation is a code to be used in documenting the termination in order to establish the employee's eligibility for reemployment and benefits. The manual states that "[t]he separation code assigned should provide the most accurate description of the condition under which the individual was separated from employment." Under the heading of "Discharges," the manual states, "[a]n employee is discharged when [his] conduct or actions are determined to be detrimental to the best interests of the Company." It then lists various reasons for discharge including, "Discharge Attendance," "Discharge Performance," "Discharge Cause," and "Discharge Other." Each reason had a separate code number next to it.

■ Our review of the language relied upon by Harrell leads us to conclude that it fails to meet *Duldulao's* requirement of a clear promise. Unlike the cases cited above, the manual contains no provision limiting or restricting the employer's ability to terminate the employment relationship at will. It appears that the definition of discharge exists solely as a guideline for classifying separations in order to determine an employee's benefits and eligibility to be rehired. Under these circumstances, we do not believe that the language of the manual contains a promise clear enough that an employee would reasonably believe it to be an offer.

The second document on which Harrell bases his breach of contract claim is the probation procedure, a supplementary procedure adopted by Ward in August of 1981 and distributed to all supervisors of management employees. The procedure was designed to rehabilitate poor performers and was required to be undertaken with all employees who had a performance rating of "MM+" or lower.

■ Even if we were to accept Harrell's argument that the probation procedure was contractually binding on Ward, he has failed to allege that he had a performance rating that would bring him within the ambit of the procedure. With respect to performance, the complaint alleges that Harrell "performed [his] duties at Ward in a satisfactory manner." In its brief in support of its motion to dismiss Harrell, Ward stated that the probation policy by its terms applied only to employees with a poor performance rating. At the hearing on the motion to dismiss, Ward again argued that the complaint failed to plead that Harrell had a performance rating which would bring him within the ambit of the probation policy and thus failed to sufficiently plead that the policy which Ward allegedly breached by discharging Harrell had any application to him. Harrell failed to respond to this argument in the trial court and does not contend on appeal that his performance rating would bring him within the ambit of the probation policy. His sole contention on appeal is that the complaint, which alleges that Ward violated the probation policy by discharging him, sufficiently alleged that the policy applied to him. We disagree. Under Illinois law, the plaintiff must plead facts, not conclusions. (*Village of Niles v. City of Chicago* (1980), 82 Ill. App. 3d 60, 68, 401 N.E.2d 1235.) Harrell's complaint contains no facts to support his claim that the probation policy applied to him.

Finally, Harrell contends that the language of the VSP letter constituted an offer which formed the basis of an employment contract under *Duldulao*. He maintains that the language of the letter contains a "promise of noncoercion" which was breached by Ward. According to Harrell's analysis, the letter contained a clear promise that participation in the VSP was voluntary, which constituted an offer of noncoercion; that he accepted the offer by continuing to work for Ward; that his continued work constituted consideration sufficient to accept the offer of noncoercion; and that Ward breached the "contract" by coercing him to resign.

We are not persuaded by this strained attempt to fit the VSP letter into a *Duldulao* setting. *Duldulao* represented a recognition that in certain situations policy statements made by an employer have the effect of inducing employees to accept work or to continue to work for

the employer and therefore should be binding on the employer if the requirements set out in *Duldulao* are met. This is in line with the rationale of *Duldulao*, which is that the presumption of employment at will can be overcome by demonstrating that the parties contracted otherwise.

██ It appears clear that the VSP offer here was not sent to Harrell as an offer to modify the at-will employment relationship or to induce him to continue to work for Ward. It contained an express offer to give Harrell benefits in exchange for his voluntary separation from the company. Given the clear language of the VSP, Harrell could not have reasonably believed it to offer anything other than what it expressly stated. The letter also stated that the only way to accept the offer was to do so in writing before a certain date. Harrell accepted the offer. His argument on appeal is essentially that he was coerced into entering the agreement. The remedy for coercion is rescission. Harrell has expressly stated in oral argument before this court that he is not seeking rescission. Under these circumstances, we believe that the trial court properly granted Ward's motion to dismiss the complaint for failure to state a cause of action.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.