JOAN CHESNICK, Plaintiff-Appellant, v. SAINT MARY OF NAZARETH
HOSPITAL *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—89—1549

Opinion filed March 18, 1991.

Jacob N. Gross, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (James E. McParland and Tom H. Luetkemeyer, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Joan Chesnick appeals an order of the circuit court of Cook County granting summary judgment in favor of defendants Saint Mary of Nazareth Hospital (Hospital) and Thomas Meirink on plaintiff's claim of breach of contract.

The facts giving rise to this appeal are as follows.

On October 8, 1984, plaintiff was hired by defendant Hospital as nurse-administrator and occupational health nurse of the Hospital's occupational and environmental medicine department. On November 1, 1984, plaintiff received a copy of the Hospital's employee manual. That manual contained the following provisions:

"SPECIAL UNPAID ABSENCE
* * *

Absence of four or more consecutive weeks:

1. A leave of absence does not guarantee that your job will be available to you when you return ***. ***
* * *

3. If you do not return to work on the date of expiration of your leave of absence, you will be automatically terminated.
* * *

SEPARATIONS AND DISCIPLINARY ACTION
* * *

5. Disciplinary Procedures[:] For violation of the Hospital code of conduct, the Hospital will employ any of the following

disciplinary actions: written warning, suspension, or discharge from the Hospital. ***

d. Separation of Service:
***

The department head will notify you of any dismissal in writing, together with the reasons for the dismissal. All dismissals are effective on the date of the dismissal notice."

Plaintiff was also given a document which read as follows:

"I have received a copy of the Saint Mary of Nazareth Hospital Center Employee Handbook. I will accept the responsibility for reading this handbook to become familiar with the rules, regulations and benefits of the Hospital. I understand that the employment relationship between myself and the Hospital is not contractual in nature.

I understand that the Personnel policies of Saint Mary of Nazareth Hospital Center are presented in this handbook in summarized form. For more information about any policy I may consult with my superior, department head of the Personnel Department. These policies are subject to change without my prior notification, and I am subject to policy changes as they are made.

Name_____ Date_____

Please return this page to the Personnel department after you have signed it."

Plaintiff signed this document on November 1, 1984, and returned it to the Hospital.

On June 9, 1986, the personnel department granted plaintiff a 90-day leave of absence. A leave of absence form in the record is stamped "ENTERED JUN 11 1986."

Plaintiff was subsequently terminated from her employment with the Hospital. The record contains conflicting dates of termination. On July 21, 1986, plaintiff telephoned defendant Meirink to inform him that she was ready to return to work. Plaintiff alleges that Meirink told her that she had been terminated from her employment and that her replacement had been hired. Meirink states in a deposition that he told plaintiff that her position had been filled, but denies that plaintiff was terminated at this time.

On September 4, 1986, defendant Hospital sent plaintiff a letter regarding her intention to return to work and informing her that unless she contacted the personnel department, she would be automati-

cally terminated on September 10, 1986. In response to a telephone inquiry by plaintiff, defendant Hospital sent plaintiff a letter dated September 23, 1986, which listed nursing positions open at the Hospital and stated that if plaintiff did not contact the Hospital by October 3, 1986, that date would be her termination date. Plaintiff's attorney sent the Hospital a letter stating that the Hospital's offer of other positions was not a good-faith offer. Defendant Hospital later sent a letter dated October 10, 1986, stating that plaintiff's failure to contact the Hospital in reply to the September 23, 1986, letter had resulted in her termination.

A "termination of service" form, stamped "ENTERED OCT 6 1986," has "Failure to return from LOA" indicated as the reason for separation, indicates that plaintiff was "eligible to re-employ" and indicates June 12, 1986, as the last day of work. Defendant Meirink stated in his deposition that a computer terminal in the personnel department indicated that plaintiff's date of termination was June 12, 1986.

Plaintiff filed suit against defendants on October 30, 1986, alleging breach of contract and retaliatory discharge. On May 23, 1989, after proceedings on the matter, the trial court granted defendants' motion for summary judgment on both counts. Plaintiff timely filed a notice of appeal as to the breach of contract claim only.

■ Therefore, the sole issue on appeal is whether the trial court erred in granting summary judgment regarding plaintiff's breach of contract claim. Plaintiff contends that she may maintain a breach of contract claim because a reasonable person could believe that her employee handbook constituted a contractual offer. Summary judgment is appropriate where there are no issues of material fact and judgment for the moving party is correct as a matter of law. *E.g., Futurevision, Inc. v. Dahl* (1985), 139 Ill. App. 3d 61, 487 N.E.2d 127.

■ Generally, an employment relationship of indefinite duration is terminable "at will" by either party with or without cause. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 489, 505 N.E.2d 314, 317; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 128, 421 N.E.2d 876, 878.) Nevertheless, the common law presumption of "at will" employment can be overcome by demonstrating that the parties contracted to the contrary. (*Duldulao*, 115 Ill. 2d at 489, 505 N.E.2d at 318.) As our supreme court stated in *Duldulao*:

"[A]n employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the pol-

icy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." *Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.

The *Duldulao* court further noted:

"[T]he handbook contains no disclaimers to negate the promises made. In fact, the introduction to the handbook states just the opposite, that the policies in the handbook 'are designed to clarify your *rights* and duties as employees.' (Emphasis added.)" (*Duldulao*, 115 Ill. 2d at 491, 505 N.E.2d at 319.)

The three factors which establish contract formation as set forth in *Duldulao* also apply where disclaiming language is at issue. *Anders v. Mobil Chemical Co.* (1990), 201 Ill. App. 3d 1088, 1095, 559 N.E.2d 1119, 1122.

Prior decisions of this court have held the presence of disclaimers in an employee handbook preclude the formation of a contract. (See *Anders*, 201 Ill. App. 3d 1088, 559 N.E.2d 1119; *Hogge v. Champion Laboratories, Inc.* (1989), 190 Ill. App. 3d 620, 546 N.E.2d 1025; *Bennett v. Evanston Hospital* (1989), 184 Ill. App. 3d 1030, 540 N.E.2d 979; *Moore v. Illinois Bell Telephone Co.* (1987), 155 Ill. App. 3d 781, 508 N.E.2d 519, *appeal denied* (1987), 116 Ill. 2d 562, 515 N.E.2d 112.) For example, in *Anders*, this court held that an employee manual was not a contract where a disclaimer appeared in the front of the manual, even though the manual provided for general disciplinary procedures and listed specific acts of punishable misconduct. See *Anders*, 201 Ill. App. 3d at 1091, 559 N.E.2d at 1123.

In the instant appeal, the record indicates that plaintiff signed a document containing disclaimers concurrently with her receipt of the employee handbook. That document reads "I understand that the employment relationship between myself and the Hospital is not contractual in nature." Even if this statement could be considered ambiguous when viewed in isolation, the portion of the statement which states that the Hospital's "policies are subject to change without my prior notification, as [employees] are subject to policy changes as they are made" makes it reasonably clear that the employee handbook is not

intended to promise employees anything, particularly when combined with the earlier statement that the employment is not intended to be contractual in nature. Moreover, as the Hospital's brief makes clear, the record shows that the Hospital, which was also the defendant in *Duldulao*, has systematically deleted or altered the language which the *Duldulao* court held created an enforceable contract.

■ Plaintiff urges that the disclaimer in this case should be strictly construed against the drafter, likening the disclaimer to an exculpatory clause. (See *Berwind Corp. v. Litton Industries, Inc.* (7th Cir. 1976), 532 F.2d 1.) Plaintiff's citation of *Berwind,* however, begs the question. *Berwind* is concerned with contractual provisions which seek to limit a party's tort liability; to reach that issue, the existence of a contract must be proven or stipulated. In contrast, the disclaiming language here attempts to prevent contract formation. Plaintiff cannot use a rule concerning the interpretation of a contract to establish the existence of a contract. See *Anders,* 201 Ill. App. 3d at 1097, 559 N.E.2d at 1124.

■ Plaintiff then argues that the manual contains definite procedures for dismissal of the type previously held to constitute a clear promise of continuing employment. (See *Tolbert v. St. Francis Extended Care Center* (1989), 189 Ill. App. 3d 503, 506-07, 545 N.E.2d 384, 386 (discussing *Doe v. First National Bank* (7th Cir. 1989), 865 F.2d 864).) However, a manual which merely provides a list of rules, the violation of which may give rise to discipline, along with the types of separation of employment which may occur, does not rise to the level of a contract. (*Harrell v. Montgomery Ward & Co.* (1989), 189 Ill. App. 3d 516, 518, 545 N.E.2d 373, 377.) Moreover, where disclaimers are at issue, the fact that a manual may delineate specific disciplinary procedures does not automatically compel this court to hold the manual enforceable as a contract. See *Anders,* 201 Ill. App. 3d 1088, 559 N.E.2d 1119.

In *Perman v. ArcVentures, Inc.* (1990), 196 Ill. App. 3d 758, 554 N.E.2d 982, upon which plaintiff heavily relies, this court denied summary judgment on the issue of whether a disclaimer precluded a reasonable person from believing the policy manual to be an offer. The disclaimer in that case was "not set off from the rest of the text, printed in capital letters or titled." (*Perman,* 196 Ill. App. 3d at 764, 554 N.E.2d at 987.) The manual in *Perman* provided that " 'discharges *must* be approved in advance by the director of employee relations or designees, and *are subject to employee appeal through established grievance procedures* [ ]' ([e]mphasis added[ ])" and that it was the " 'policy of the Medical Center to *assure* every employee of the

right of appeal, through an established grievance procedure from an unfavorable decision affecting his employment.' (Emphasis added.)" *Perman*, 196 Ill. App. 3d at 765, 554 N.E.2d at 985.

In *Anders*, this court affirmed a summary judgment order on the basis that the handbook at issue did not constitute a clear promise of more than "at-will" employment. The *Anders* handbook listed specific acts of punishable misconduct and:

> " 'Generally, a five-step procedure will be used in taking corrective action so that individuals will have an opportunity to correct their behavior. However, a number of acts of misconduct are so universally recognized as being serious violations of accepted behavior that the commission of these acts may subject a person to immediate discharge.' " (*Anders*, 201 Ill. App. 3d at 1091, 559 N.E.2d at 1120.)

The manual then went on to detail each step of the disciplinary procedure, including provisions for review and approval of disciplinary action by management, as well as a right of appeal. *Anders*, 201 Ill. App. 3d at 1091-92, 559 N.E.2d at 1120.

In this case, the record shows that the manual lists rules which may give rise to discipline. The manual provides that one of several methods "will" be employed in the event of a rule violation, though the manual also provides that each method "may" or "can" be used in a given instance. The manual here further provides:

> "Normally, three warning notices for any reason within a 12 month period (from the date of your first warning) will result in dismissal. Cases of immediate dismissal do not require prior warnings."

Finally, the manual provides that the Hospital "will" give written notice of a dismissal and the reasons therefor.

■ The record therefore indicates that the language in the manual here was at least superficially similar to that used in the *Perman* and *Anders* manuals. However, the disclaimer in *Perman* was not set off from the rest of the text, put in capital letters or titled. In contrast, the disclaimer in this case was contained on a separate page signed by the plaintiff. Based on the record on appeal, this manual more closely resembles the *Anders* noncontract than the *Perman* contract.

Finally, in her reply brief, plaintiff discusses *Mitchell v. Jewel Food Stores* (1989), 189 Ill. App. 3d 450, 545 N.E.2d 337, *rev'd* (1990), 142 Ill. 2d 152. *Mitchell*, however, did not involve the use of a disclaimer in an employee manual. Moreover, the manual in *Mitchell* indicated that the employee could not be fired without just cause

(*Mitchell*, 142 Ill. 2d at 157); plaintiff has not pointed to a similar promise in the manual at issue here.

In sum, plaintiff has failed to show that the trial court erred in ruling that the handbook at issue here was insufficient to overcome the presumption of "at-will" employment. For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.