Jacques L. **BOULAY**,
Plaintiff–Appellant,

v.

**IMPELL CORPORATION**, a Foreign Corporation, Defendant–Appellee.

No. 90–3436.

United States Court of Appeals,
Seventh Circuit.

Argued July 9, 1991.

Decided Aug. 8, 1991.

Gerald A. Goldman, Arthur R. Ehrlich (argued), Goldman & Marcus, Chicago, Ill., for plaintiff-appellant.

Nina G. Stillman, Bruce R. Alper (argued), Christopher A. Nichols, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an action for breach of an employment contract removed from state to federal court on the basis of diversity jurisdiction. Illinois substantive law controls. The employee, Jacques Boulay, alleged that his former employer, Impell Corporation, deprived him of due process when it terminated him from his engineering job without corrective counseling or notice of probationary status in violation of its Human Resources Manual. The district court decided that the manual created no contractual right to progressive discipline, and Boulay appeals.

Impell Corporation is an engineering firm engaged in the business of constructing and rehabilitating nuclear and fossil fuel power generation plants. It hired Boulay as a supervising engineer in October 1980, and promoted him four years later to the position of section manager at its facility in Knoxville, Tennessee.

In September 1987, Impell transferred Boulay to its midwest headquarters in Lincolnshire, Illinois, where he was to manage the section responsible for developing the non-nuclear side of Impell's business. Upon his transfer, Boulay spent much of his time setting up a fossil fuel contract with Nekoosa Paper Company, a major client. When Impell finally secured the contract, it selected someone other than Boulay to head the project, in part because of what his supervisors perceived as inadequate interpersonal and communication skills.

In July 1989, Impell terminated Boulay for unsatisfactory interpersonal relations with his peers and subordinates. While Boulay's supervisors never formally notified him that he was on probation, they did speak to him once or twice about his performance before terminating him.

During Boulay's employment, Impell had a human resources manual containing personnel policies and practices. Procedure § 6.1 of the manual, entitled "Termination (Voluntary & Involuntary)," stated that "[t]his procedure *outlines* termination requirements in compliance with Company policy and describes the *basic steps* to be taken in processing terminating employees." (emphasis added). The "involuntary termination" section stated that employees "*may* be discharged for ... failure to correct documented performance/conduct inadequacies." (emphasis added). This section provided further that "*[i]n most situations* a manager/supervisor must have followed the corrective counseling process (refer to "Due Process") prior to terminating an employee for [performance/conduct inadequacies]." (emphasis added).

Procedure § 5.1 of the manual, entitled "Due Process," stated that

[i]t is the Company's policy that employees with performance inadequacies are to be given corrective counseling and an opportunity to remedy such performance-related problems/misconduct. Termination, except in cases of gross misconduct, *should* occur as a final solution only when such corrective counseling activities have failed. Employment may be terminated during the first 6 months without following due process.

(emphasis added). "If an employee's performance/conduct falls below an acceptable level, the manager/supervisor *should* discuss the problem(s) with the employee" and document the discussion. (emphasis added). "If substandard performance continues, the supervisor will place the employee on probation ...," document this fact, and forward such documentation to the Human Resources Manager. An employee "*may* be terminated" during the probationary period if his performance does not improve to a satisfactory level. (emphasis added). Procedure § 5.1 concluded with a disclaimer stating that "[n]othing in this policy shall be construed as a guarantee of employment or a promise of continued employment."

In March 1990, Boulay filed this action in the Circuit Court of Cook County, alleging that Impell terminated him without complying with its personnel policies and procedures. Impell properly removed the case to the Northern District of Illinois based on the parties' diverse citizenship, *see* 28 U.S.C. § 1332, and thereafter moved for summary judgment on the ground that the

manual did not contain a clear promise of disciplinary procedures as required by *Duldulao v. St. Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987). The district court agreed and granted Impell's motion.

■ In *Geva v. Leo Burnett Co.*, 931 F.2d 1220 (7th Cir.1991), we reiterated the test under Illinois law for determining whether an employee handbook creates enforceable contractual rights:

> The Illinois Supreme Court recently accepted employee handbooks as potential sources of employment contract terms. *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987). The opinion in *Duldulao* set out three requirements for a handbook to rise to the level of a contract: (1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the statement must be disseminated in such a way that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Id.* at 490, 505 N.E.2d at 318.

*Geva*, 931 F.2d at 1225; *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 612 (7th Cir.1989). "If any one of these elements is absent, no express contract has been formed, and the relationship is merely one of 'employment-at-will.'" *Doe v. First Nat'l Bank of Chicago*, 865 F.2d 864, 872 (7th Cir.1989) (citing *Duldulao*, 115 Ill.2d at 489, 106 Ill.Dec. at 11, 505 N.E.2d at 317). The question of whether a contract exists is one of law for a judge to decide. *Wojcik v. Commonwealth Mortgage Corp.*, 732 F.Supp. 940, 941 (N.D.Ill.1990).

Boulay argues that the language of Impell's manual contained the kind of clear promissory language which the Illinois Supreme Court relied upon in finding an enforceable contract in *Duldulao*. We disagree. In *Duldulao*, the employee handbook set out a disciplinary procedure and stated that permanent employees *"are nev-*er dismissed without prior written admonitions and/or an investigation that has been properly documented," that "three warning notices within a twelve-month period *are required* before an employee is dismissed," and that "termination contemplated by the hospital *cannot occur without proper* notice and investigation." *Duldulao*, 115 Ill.2d at 491, 106 Ill.Dec. at 12, 505 N.E.2d at 318. (emphasis in original). The Illinois Supreme Court determined that this language was sufficient to allow an employee reasonably to believe that the disciplinary procedure was part of the employer's offer. 115 Ill.2d at 491–92, 106 Ill.Dec. at 13, 505 N.E.2d at 319.

■ In contrast, Impell's manual contained no such clear promise. The manual provided that "termination, except in cases of gross misconduct, should occur as a final solution only when corrective counseling activities have failed," that a manager or supervisor "should" discuss performance problems with employees, and that employees "may be" terminated while on probation. This language is suggestive rather than mandatory. It neither guarantees progressive discipline nor requires "just cause" as a basis for dismissal. *See Lampe v. Swan Corp.*, 212 Ill.App.3d 414, 417, 156 Ill.Dec. 658, 571 N.E.2d 245, 247 (5th Dist.1991). As such, the manual cannot establish a basis for finding a promise to use specific disciplinary procedures prior to termination. *Compare Doe*, 865 F.2d at 872 ("an employee handbook or similar document creates enforceable contractual rights only when specific procedures have been prescribed by positive and mandatory language"; memorandum which did not promise specific disciplinary procedures fell short of creating a contract); *Corcoran*, 875 F.2d at 612 ("no enforceable contract is formed unless there has been communication of a clear and explicit promise"; precatory language is not enough); *Churchill v. Waters*, 731 F.Supp. 311, 319–20 (C.D.Ill. 1990) (employee handbook containing words such as "may be," "normal procedures," "ordinarily," and "should" did not constitute an offer that specific disciplinary procedures would be used); *Harrell v.*

*Montgomery Ward & Co.*, 189 Ill.App.3d 516, 522, 136 Ill.Dec. 849, 853, 545 N.E.2d 373, 377 (1st Dist.1989) (manual which contained no provision limiting the employer's discretion to terminate the employment relationship at will constituted a general policy statement and not an offer); *Koch v. Illinois Power Co.*, 175 Ill.App.3d 248, 256, 124 Ill.Dec. 461, 467, 529 N.E.2d 281, 287 (3d Dist.1988) (manual full of general language was nothing more than an outline to guide management and not a clear promise of an offer), *appeal denied*, 124 Ill.2d 555, 129 Ill.Dec. 150, 535 N.E.2d 915 (1989), *with Wojcik*, 732 F.Supp. at 942 (manual which permitted termination for performance issues "only after the employee has been given the opportunity and support necessary for improvement" gave employees the right to correct their conduct and constituted a clear offer); *Patton v. Univ. of Chicago Hosp.*, 706 F.Supp. 627, 630 (N.D.Ill.1989) (reduction-in-force policy which articulated specific layoff procedures and limited supervisors' discretion to follow them constituted clear promise to abide by the procedures in reducing the work force); *Mitchell v. Jewel Food Stores*, 142 Ill.2d 152, 162, 154 Ill.Dec. 606, 568 N.E.2d 827, 831 (1990) (manual created clear promise that after completing the probationary period, the employee "shall not be suspended, discharged or otherwise disciplined without just cause").

In addition, Impell's manual provided that "nothing in this policy shall be construed as a guarantee of employment or a promise of continued employment." Such a disclaimer negates an employee's contractual expectations, *see Doe*, 865 F.2d at 873 (manual which unambiguously disclaimed any purpose to bind the parties did not create an enforceable contract right); *cf. Duldulao*, 115 Ill.2d at 491, 106 Ill.Dec. at 13, 505 N.E.2d at 319 (absence of disclaimer supported conclusion that handbook contained a clear promise of progressive disciplinary procedures), and when coupled with the permissive policy language of the manual, made it unreasonable for Boulay to believe that he would receive counseling before being terminated from his position.

Boulay argues that the disclaimer merely reserved Impell's right to terminate an employee after it conducted corrective counseling. He relies on *Perman v. Arcventures, Inc.*, 196 Ill.App.3d 758, 143 Ill.Dec. 910, 554 N.E.2d 982 (1st Dist.1990), for support. But *Perman* is of little help to Boulay for two reasons. First, the disclaimer there "was not set off from the rest of the text, printed in capital letters or titled." *Perman*, 196 Ill.App.3d at 764, 143 Ill.Dec. at 915, 554 N.E.2d at 987. Second, unlike Impell's manual, the one in *Perman* promised, in unequivocal terms, an established grievance procedure for unfavorable decisions affecting employment. *Id.* at 765, 143 Ill.Dec. at 915, 554 N.E.2d at 987 (manual provided that "discharges *must* be approved in advance by the director of employee relations or designees, and *are subject to employee appeal through established grievance procedures*," and that the employer's policy was "to *assure* every employee of the right of appeal, through an established grievance procedure from an unfavorable decision affecting his employment") (emphasis in original). *See Chesnick v. St. Mary of Nazareth Hosp. Center*, 211 Ill.App.3d 593, 598–99, 156 Ill.Dec. 69, 72, 570 N.E.2d 545, 548 (1st Dist.1991) (distinguishing *Perman* on these two grounds); *Habighurst v. Edlong Corp.*, 209 Ill.App.3d 426, 429, 154 Ill.Dec. 226, 228, 568 N.E.2d 226, 228 (1st Dist.1991) (same).

For the foregoing reasons, the judgment of the district court is accordingly AFFIRMED.