CHARLES W. LAMPE *et al.*, Plaintiffs-Appellants, v. SWAN CORPORA-
TION, Defendant-Appellee (Ann Bevel, Plaintiff).

Fifth District   No. 5—89—0704

Opinion filed May 1, 1991.

Leahy Law Offices, of Springfield (Mary Lee Leahy, of counsel), for appellants.

Eric M. Schmitz, of Armstrong, Teasdale, Schlafly, Davis & Dicus, of St. Louis, Missouri, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Plaintiffs sued Swan Corporation claiming that they were discharged in violation of a contract created by Swan's employee handbook. The circuit court dismissed plaintiffs' complaint, ruling: (1) plaintiffs were employees-at-will; and (2) the employee handbook was not a contract. Plaintiffs appeal. We affirm.

The fundamental question in this case is whether the employee handbook created a contract.

■ The Illinois Supreme Court has held that employee handbooks, under some circumstances, can create contractual rights. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314.) In *Duldulao*, the court stated:

> "[W]e hold that an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.)

The *Duldulao* test determines if an implied-in-fact contract exists. This determination is a threshold question of law. *Harrell v. Montgomery Ward & Co.* (1989), 189 Ill. App. 3d 516, 521, 545 N.E.2d 373, 376, citing *Hunt v. IBM Mid America Employees Federal Credit Union* (Minn. 1986), 384 N.W.2d 853, 856; see also *Pundt v. Millikin University* (1986), 145 Ill. App. 3d 990, 496 N.E.2d 291.

■ Implied-in-fact contracts are different from express contracts. Express contracts are those in which terms of the contract or agreement are openly and fully uttered and avowed at the time of the making. (*Bull v. Mitchell* (1983), 114 Ill. App. 3d 177, 448 N.E.2d 1016.) Implied-in-fact contracts are those whereby a contractual duty is imposed by reason of a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of

the promisor. *Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 400 N.E.2d 614.

In *Duldulao*, the defendant hospital stated in its handbook that permanent employees would receive three warning notices prior to discharge. When the hospital failed to follow the procedure, Duldulao sued. The court found an implied-in-fact contract existed because the handbook contained a promissory expression, and Duldulao had alleged facts from which her reliance upon these promises could be inferred.

■ When addressing plaintiffs' claims, all well-pleaded allegations are required to be taken as true. (*Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 440 N.E.2d 942.) Plaintiffs claim they were discharged or, in the alternative, laid off in contravention to the employment contract as created by the Swan Employee Handbook. Under an implied-in-fact analysis, therefore, only the portions of the handbook dealing with discharge and layoffs are relevant.

To determine whether a contractual obligation arises out of Swan's employee handbook, we must examine the language of the employment handbook and determine whether that language amounts to a promise that has been clearly expressed so that an employee would reasonably believe that an offer has been made. (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.) Because the complaint in this case was dismissed with prejudice, we examine plaintiffs' allegations and the language of the handbook.

The following section of the handbook addresses discharge of employees:

"Termination-Involuntary

An employee's failure to follow Swan policies and procedures can lead to involuntary termination of employment. *** Occasionally an employee fails to consider the company and his fellow workers in matters which are sufficiently serious to warrant discharge for cause. Cause for dismissal includes but is not limited to:

1. Unsatisfactory work.
2. Excessive absence or tardiness.
3. Dishonesty
4. Discourtesy.
5. Insubordination.
6. Falsification of employment or personal status records.
7. Revealing confidential information pertaining to the Swan Corporation or to an employee.
8. Conduct which reflects unfavorably on Swan.

9. Any fraudulent act.

10. Harassment, fighting, horseplay, scuffling or other disorderly, disruptive or unruly conduct.

11. Possession of firearms, explosives or weapons of any kind.

12. Actual or attempted theft, fraud or misappropriation of property including the aiding or abetting of the same.

13. Gambling, conducting games of chance or possessing gambling equipment on Company premises.

14. Disregard of General Safety Rules and Procedures, creating or contributing to unsafe, unsanitary or poor housekeeping conditions.

If any problem is serious enough, any employment maybe terminated without previous formal counseling. *** THE SWAN CORPORATION RESERVES THE RIGHT TO DISCIPLINE ANY EMPLOYEE FOR ANY OFFENSE NOT SPECIFICALLY MENTIONED IN THESE RULES."

The circuit court found nothing in this language which amounted to an offer. We agree. This language merely gives examples of the kinds of conduct which will subject plaintiffs to discharge. It does not, as plaintiffs suggest, promise: (1) that plaintiffs will only be discharged for cause; (2) that reasons for discharge will be given; or (3) that disciplinary procedures are required prior to discharge.

As for the language, "[i]f any problem is serious enough, any employment may be terminated without previous formal counseling," we hold that no reasonable employee, without more, would construe this to be a promise to provide formal counseling prior to termination.

Plaintiffs claim in the alternative that they were laid off and that the layoffs did not follow employee handbook procedures. The portion of the handbook on which plaintiffs rely reads:

"All Salary [sic] receive special consideration when, and if, a salaried lay-off is deemed necessary. Efforts would be made to retain all, but if a salary lay-off should develop, a combination of knowledge, experience, talent and seniority would dictate the order by which the lay-off would take place in the salaried ranks."

Here too, the circuit court found nothing in this language which amounted to an offer. Plaintiffs contend that the words "deemed necessary" contemplate that a hearing was required before determining if layoffs were necessary. Nothing in the language of the handbook even remotely suggests such a result. As to layoff procedures, the language of this section does not contain a promise to follow strict

guidelines in determining whom to lay off. Rather, it states that purely subjective standards such as knowledge, experience, and talent would be coupled with seniority in determining whom to retain and whom to lay off. We agree with the circuit court that this language also does not amount to an offer.

Plaintiffs allege that other portions of the handbook create contractual rights. We cannot agree.

One section upon which plaintiffs rely states in pertinent part:

> "Promotions/Transfers/Demotions/New Hires
>
> The Company adheres to the policy of promotion from within wherever possible. The Company does, however, reserve the right to go outside the present work force to fill salaried personnel positions. *** When an individual is promoted, transferred, demoted, or hired in from outside, the trial period is three (3) months. *** At the end of the trial period, job performance is evaluated. If the performance is judged acceptable, the position then becomes permanent."

Plaintiffs pled that they were discharged, or, in the alternative, laid off. Plaintiffs did not plead that they were promoted, transferred, demoted or newly hired. Therefore, even if this language were construed to be a promissory expression, no implied-in-fact contract can exist under the facts pled. Had the plaintiffs claimed that after being hired and after working three months, management said the trial period is now one year, then the conclusion might be different; but here, plaintiffs' pleadings have nothing to do with this section of the handbook.

Another allegation plaintiffs make is that Swan breached the employment contract created by the handbook by not allowing plaintiffs to "bump down" or "bid" into positions for which plaintiffs were qualified. The section of the handbook on which they rely states:

> "When an hourly paid (excluding Lead) job vacancy occurs in any department, on any shift, the system for filling that job is as follows:
>
> * * *
>
> 1. The vacancy is first offered to each person in the department in order of seniority. This policy gives the already trained people presently in the department the first opportunity to change shifts or jobs.
>
> * * *
>
> 15. Any Supervisor, Lead, Fork Truck, or Group Lead employee moved down by job elimination to a level lower than their existing position will automatically assume initial top sen-

iority within the department. After the *initial* choice or job preference, normal seniority prevails."

Plaintiffs argue that this language places upon Swan a contractual duty to move an employee to a lower position when the employee's job is eliminated; that it had been Swan's policy and practice to allow group leaders, lead workers, supervisors and managers to bid or bump downward if their positions were eliminated; and, that in the four years prior to plaintiffs' discharge, as many as seven employees were allowed to bid or bump down because of job elimination.

Again, this section does not apply because plaintiffs were discharged; they were not moved down due to job elimination. The words "job elimination" and "discharge" have different meanings. Whereas "job elimination" means that a position is no longer needed, "discharge" means that a person is no longer needed.

Plaintiffs do not plead that they were demoted due to jobs being eliminated; rather, plaintiffs pled that they were discharged. It is clear that this section does not contemplate termination, but rather deals specifically with demotions due to job elimination. The clearest indication that this is true is that Swan deals with termination and layoffs in separate sections of the handbook.

■ Plaintiffs also contend that the prior practice of bidding or bumping down is relevant to determining the intent of the language within the handbook. However, plaintiffs are placing the proverbial cart before the horse, for courts use extrinsic evidence only after determining that a contract ambiguity exists. (See, *e.g., Fox v. Inter-State Assurance Co.* (1980), 84 Ill. App. 3d 512, 405 N.E.2d 873.) In order for there to be a contract ambiguity, there must first be a contract. Whether there is a contract is the sole issue before us, and we find, as the circuit court did, that no implied-in-fact contract exists.

The circuit court is affirmed.

Affirmed.

GOLDENHERSH and CHAPMAN, JJ., concur.