TESS M. LEE, Plaintiff-Appellant, v. DEANN CANUTESON *et al.*, Defendants-Appellees.

Third District    No. 3—90—0543

Opinion filed May 31, 1991.

STOUDER, P.J., dissenting.

Steven D. Rittenmeyer, of Macomb, for appellant.

Flack, McRaven & Stephens, of Macomb (A. Anthony Ashenhurst, of counsel), for appellees.

JUSTICE GORMAN delivered the opinion of the court:

The plaintiff, Tess M. Lee, brought this action in the circuit court against defendants Bethphage Community Services, Inc. (Bethphage), Deann Canuteson, Kris Hennig, and Robert Rose. This action arises out of the termination of the plaintiff's employment with Bethphage. The complaint contains three counts: breach of contract, intentional interference with contractual relations, and defamation. The circuit court granted defendants' motion for summary judgment on the first two of these counts. The circuit court later made a finding permitting immediate appeal from the summary judgment, and it is that appeal the plaintiff is now bringing. We affirm.

In June 1987 the plaintiff was hired by Bethphage. Shortly after the plaintiff was hired, a supervisor gave the plaintiff an informal overview of the policies and procedures of Bethphage, in the course of which the plaintiff was presented with several documents to sign. One such document was entitled "Bethphage Community Services—Employment Agreement" (employment agreement). Some of its significant provisions are as follows:

> "The purpose of this agreement is to ensure that both employer and employee are clear about the terms of employment. ***

> *** In dealing with applicants and staff, a spirit of cooperation and mutual responsibility will be fostered. ***

> *** If you have concerns or suggestions, please bring them to the attention of your supervisor. *** If, after bringing your concern to the attention of your supervisor, you are not satisfied, talk to the next person up in the chain of command. If you

remain unsatisfied, follow the formal grievance procedure as outlined in the Personnel Policies and Procedures."

At the end of this document, just above a line on which the plaintiff signed her name, was this statement:

"I understand the above are general management guidelines and may be changed as business necessity requires. The above does not constitute a written contract and I understand my employment is for no definite period and may be terminated at will.

I acknowledge that we have discussed all the above."

In her complaint the plaintiff alleges that she "executed documents acknowledging receipt, understanding and willingness to abide by defendant Bethphage's employment policies and accepted the terms thereof by continuing to work for defendant."

In March 1988 the plaintiff was promoted to a new position at Bethphage. Also in March 1988, Bethphage distributed an employee handbook to its employees, including the plaintiff. Significant provisions of that handbook include the following:

"This handbook has been prepared to familiarize you with Bethphage's Personnel Policies and Procedures, as well as a general description of your benefits. ***

* * *

*** In dealing with applicants and staff, a spirit of cooperation and mutual responsibility will be fostered. ***

### EMPLOYEE HANDBOOK STATEMENT

*** The Handbook is meant to give you information regarding agency rules, regulations, policies, procedures, and benefits. For more specific information, refer to the Bethphage Policy and Procedure Manual.

Nothing in this Handbook is intended to create an employment contract between Bethphage and an employee either for employment or for the providing of any benefit. If an employment relationship is established, the employee has the right to terminate his/her employment at any time and Bethphage Mission has the same right. *** This Handbook does not constitute a contract of employment, nor does it contain all of the information you will need during the course of your employment. *** [T]he policies, procedures, and benefits outlined in this Handbook are subject to review and change at any time. Changes may *only* be authorized by the Vice President of Human Resources. ***

* * *

A violation of any of Bethphage's general work guidelines or policies set forth in this handbook shall be cause for disciplinary action including discharge. * * *

* * *

4.3 *Disciplinary Measures*

To communicate to employees what work habits and skills are expected of them to perform their job satisfactorily, a progressive discipline approach may be used.

When an employee violates a Bethphage work guideline or policy, or job performance is unsatisfactory, the Supervisor will make an evaluation as to what disciplinary measures should be taken. Disciplinary measures include a staff conference, disciplinary probation, suspension or termination.

4.4 *Staff Conference*

When a disciplinary problem exists, a staff conference will be requested in writing by the Supervisor and held at a mutually agreeable time no later than five working days after the initial request. * * * At the staff conference, the Supervisor will follow the format of the Bethphage staff conference form and complete all sections of the form.

* * *

Salaried employees are asked to give at least one month advance written notice of resignation. * * * If proper notice is given, employees may receive up to 80 hours [of] accumulated [Paid Days Off]. * * *

* * *

It is the sincere intent of Bethphage to be fair and reasonable with all employees at all times. However, in relationships, problems may develop. * * * If an employee * * * feels that they [sic] have been treated unfairly, * * * the following procedure for solution of such problems may be used without fear of recrimination. Failure to comply with any of the time limits listed below shall constitute a waiver of the grievance:

A. *Staff Conference*—* * *

B. *Appeal Process*—* * *." (Emphasis in original.)

The plaintiff alleges in her complaint that she read the handbook and accepted its terms by continuing to work for Bethphage.

In November 1988 Rose and Hennig, two managerial employees of Bethphage, without prior notice called the plaintiff into a meeting with them. At this meeting Rose explained some problems in the plaintiff's work performance as related in a written report by defend-

ant Canuteson (another managerial employee of Bethphage), who was not present at the meeting. According to the plaintiff's amended affidavit, at this meeting "the terms and conditions of section 4.4 of the Bethphage Employee Handbook were adhered to by defendants and the prescribed form completed." Rose put the plaintiff on a 30-day disciplinary probation. In response, the plaintiff gave a four-week notice of resignation. In response to that, Rose ordered the plaintiff to clean out her desk and to be gone by the end of the day. A few days later the plaintiff returned to the office to request that she be permitted to work until the end of the four-week period. Rose ordered the plaintiff from the building, but commented that the plaintiff knew the procedure for filing a grievance. The record is silent on whether the plaintiff ever filed such a grievance.

On April 18, 1989, the plaintiff filed her complaint in this case. It consists of three counts. The first seeks recovery for breach of contract. The second seeks recovery for intentional interference with contractual relations. The third seeks recovery for defamation. On June 27, 1990, the circuit court granted defendants' motion for summary judgment as to the first two counts. On July 17, 1990, the circuit court entered a special finding to permit plaintiff to appeal from the summary judgment under Supreme Court Rule 304 (134 Ill. 2d R. 304). On August 3, 1990, plaintiff timely filed her notice of appeal.

The issue on review is whether the circuit court erred in granting summary judgment in defendants' favor on the first two counts of the plaintiff's complaint. Summary judgment is proper only where the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).

■■ ■ Essential to the employer-employee relationship is the existence of an employment contract, express or implied. (See *A.J. Johnson Paving Co. v. Industrial Comm'n* (1980), 82 Ill. 2d 341, 350, 412 N.E.2d 477, 481.) In the construction of an employment contract, the court is seeking to ascertain the intention of the parties. (See *Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 219, 422 N.E.2d 879, 882.) An employment relationship without a fixed duration is presumed to be terminable at will by either party, but this presumption can be overcome by demonstrating that the parties contracted otherwise. (See *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 489, 505 N.E.2d 314, 317-18.) The nub of this case is determining whether the parties had "con-

tracted otherwise" than that the employment relationship would be terminable at will by either party.

At this time the principal case in Illinois dealing with whether and to what extent an employee handbook or similar statement by an employer creates enforceable contract rights is *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314. The Illinois Supreme Court in that case stated:

> "[W]e hold that an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.)

All three conditions set forth in *Duldulao* must be present in order for an employee handbook or other policy statement to create enforceable contract rights. See *Koch v. Illinois Power Co.* (1988), 175 Ill. App. 3d 248, 529 N.E.2d 281.

By way of her complaint, the plaintiff took the position that certain of the defendants breached obligations

> (a) "to act fairly and reasonably in disciplinary situations";
>
> (b) "to act in a manner of mutual responsibility [*sic*] by communicating expectations and employing a progressive discipline approach";
>
> (c) "to give plaintiff adequate written notice of a staff conference"; and
>
> (d) "to allow plaintiff to give at least one month written notice of resignation."

However, for any of the defendants to be so obligated Bethphage must have promised the plaintiff that it would do these things.

There was no enforceable promise "to act fairly and reasonably in disciplinary situations." The only statement in the employment agreement or the employee handbook that is close to this statement is in the section of the employee handbook on the procedure for grievances and appeals, and it reads: "It is the sincere intent of Bethphage to be

fair and reasonable with all employees at all times." An employee could not reasonably believe that this statement constituted a promise clear enough and certain enough to become a part of an offer of continued employment.

Regarding progressive discipline, the employee handbook states, "To communicate to employees what work habits and skills are expected of them to perform their job satisfactorily, a progressive discipline approach *may* be used." (Emphasis added.) This language clearly gave discretion to Bethphage management to use progressive discipline or not in any given case as it saw fit, and so could not be construed as a promise to always use progressive discipline.

With regard to the staff conference, the employee handbook states in relevant part: "When a disciplinary problem exists, a staff conference will be requested in writing by the Supervisor and held at a mutually agreeable time *no later than* five working days after the initial request." (Emphasis added.) This statement does not promise any particular form of written request or any minimum period of time an employee would have to prepare for a staff conference, and so it cannot be said that by it Bethphage promised "to give plaintiff adequate written notice of a staff conference."

The resignation provision in the employee handbook could not possibly be construed as promising anything on the part of Bethphage: "Salaried employees are *asked* to give at least one month advance written notice of resignation. *** If proper notice is given, employees *may* receive up to 80 hours [of] accumulated [Paid Days Off]." (Emphasis added.)

The presence of a disclaimer will not always prevent a particular statement in an employee handbook from becoming a term of a contract of employment (see *Perman v. ArcVentures, Inc.* (1990), 196 Ill. App. 3d 758, 554 N.E.2d 982). In this case, however, the combination of the clarity of the disclaimers in the employment agreement and the employee handbook and the uncertainty of the relevant statements in those documents was such that an employee could not have reasonably believed that the employer intended those statements to be promises that were part of an offer of new or continued employment. Therefore, the circuit court did not err in entering summary judgment for the defendants on the count of the complaint seeking recovery for breach of contract.

No argument has been presented to show any error by the circuit court in granting summary judgment on the count of the complaint claiming intentional interference with contractual relations. Points not argued are waived. (134 Ill. 2d R. 341(e)(7).) Therefore, we

need not consider whether summary judgment in defendants' favor was proper as to count II.

Affirmed.

McCUSKEY, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:

After reviewing the majority opinion in the above-captioned case, I must respectfully dissent.

The record reveals that at the November 1988 meeting, the defendants acted as though they were abiding by section 4.4 of the employee handbook. The defendants did not operate as though the employee handbook was rendered a virtually meaningless document by the much emphasized disclaimers. Rather, the defendants' contemporaneous construction of the employee handbook found the plaintiff to be entitled to a hearing. Indeed, the defendants must have believed they were bound by the requirements of the employee handbook or else they wouldn't have subscribed to what they thought were the appropriate procedures. The majority opinion, however, unlike the defendants, considers the employee handbook a meaningless document.

The majority opinion significantly limits the holding in *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314. It is true that the language in the employee handbook at issue in *Duldulao* contained specific language such as "always" and "never." However, the language of the employee handbook in *Pine River State Bank v. Mettille* (Minn. 1983), 333 N.W.2d 622, which our supreme court relied on in *Duldulao*, did not contain specific language and yet was found to constitute a valid offer to the employee.

Whether any particular personnel manual modifies any particular employment-at-will relationship and becomes part of the particular employment contract is a question of fact. Evidence relevant to this factual decision includes the language used in the personnel manual as well as the employer's course of conduct and oral representations regarding it. In addition, if an employer chooses to issue a policy statement or handbook, and by language or action encourages reliance thereon by the employee, the employer cannot then treat the policy as illusory and only selectively abide by it. See *Leikvold v. Valley View Community Hospital* (1984), 141 Ariz. 544, 688 P.2d 170.

Furthermore, the majority opinion emphasizes the supposed clarity of the disclaimers. This court, however, is not limited to analyzing only the language found in the employee handbook. Indeed, the majority here points out that the presence of a disclaimer will not always prevent a particular statement in an employee handbook from becoming a term of a contract of employment. (See *Perman v. ArcVentures, Inc.* (1990), 196 Ill. App. 3d 758, 554 N.E.2d 982.) In the instant case, the defendants acted as though they were complying with the terms of the employee handbook. They gave no indication that the disclaimers applied or prevailed over the plaintiff's claims. The majority opinion here, however, seems to reward the ambiguous language found in the employee handbook and ignores the defendants' own attempt to abide by the terms of the employee handbook. Surely, our supreme court in *Duldulao* did not wish to convey a message encouraging illusory employee handbooks.

In any case, I believe a fact question exists whether the terms of the employee handbook combined with the defendants' actions created contractual rights for the plaintiff. The trial court's granting summary judgment for the defendants should be reversed.

For these reasons, I must respectfully dissent.