Michael M. McCALMENT,
Appellant–Plaintiff,

v.

ELI LILLY & COMPANY,
Appellee–Defendant.

No. 79A05–0506–CV–325.

Court of Appeals of Indiana.

Jan. 31, 2007.

Michael C. Kendall, Kendall–Hahn, Carmel, IN, Attorney for Appellant.

Ellen E. Boshkoff, Susan W. Kline, Baker & Daniels, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Michael McCalment appeals the trial court's grant of a motion to dismiss by Eli Lilly & Company ("Lilly"). McCalment raises five issues, which we consolidate and restate as whether the trial court erred by granting Lilly's motion to dismiss under Ind. Trial Rule 12(B)(6).

The relevant facts as alleged in McCalment's complaint follow. In September 1998, Lilly hired McCalment. At that time, Lilly gave him a document entitled "Employee Information A HANDBOOK FOR EMPLOYEES OF ELI LILLY AND COMPANY" (hereinafter "Handbook"). Appellant's Appendix Tab 1 at Exhibit 1 Cover. Lilly unilaterally drafted and prepared the Handbook, and the provisions were not subject to negotiation by the employees. Lilly informed McCalment that the Handbook was designed to help him understand various company policies, which should be of continuing interest to him as both a new and experienced employee. Lilly told McCalment that the employment relationship could be terminated by either party, at any time, with or

without cause. Lilly told McCalment via the Handbook that if a concern could not be resolved through discussion between McCalment, supervision, and human resources, McCalment was encouraged to use Lilly's formal nonbinding grievance procedure, which would ensure prompt and thorough consideration of the problem. Lilly also told McCalment that his use of the grievance procedure would not jeopardize his future with Lilly. Lilly told McCalment that Lilly would follow a procedure upon submission of a written grievance within six months of the occurrence of a problem or an issue that would culminate in a factual hearing by a Grievance Review Board ("Board") and a written determination by the Board.

On December 8, 2000, Terral Platt, a supervisor, gave McCalment a written notice that his performance was unacceptable. McCalment told Platt that he disagreed with the evaluation. Platt told McCalment that the warning would be removed automatically from his file within one year or less and that the warning could not be used against him after the date it was removed. In reliance on Platt's representations, McCalment did not exercise his rights under the grievance procedure.

On June 9, 2001, McCalment received a "coaching"[1] from Lilly. Appellant's Appendix Tab A at 8. McCalment was advised that the coaching would be removed from his file and could not be used against him after one year. In reliance on Lilly's representations, McCalment did not exercise his rights under the grievance procedure.

On November 27, 2002, two years after Lilly's written notice and one year and a half after Lilly's coaching, Trent Smith, a manager, employee, and agent of Lilly, placed McCalment on probation for six months. Lilly told McCalment that part of the justification for his probation was the warning notice of unacceptable performance in December 2000 and the coaching on June 9, 2001, coupled with an alleged personal use of a computer in October 2002. McCalment told Smith that Lilly had advised him that the December 2000 and June 2001 incidents were automatically removed from his files one year after the date of each and could not be used against him. Smith denied McCalment's protest without explanation.

Smith altered McCalment's job duties and placed McCalment on an operation known as the "PKC process." *Id.* at 9. McCalment told Smith that he had not been completely and properly trained for and instructed in the performance of the process. McCalment also told Smith that he was colorblind and would have difficulty with the process and quality control. Smith ordered McCalment to go ahead anyway. McCalment inadvertently contaminated mixtures of chemicals in a vat with liners from another mixture. On December 2, 2002, upon learning of his mistake, McCalment immediately reported the incident to management.

Four days later, Platt telephoned McCalment and told him to stay home from work until someone on behalf of Lilly contacted him. Fifteen days later, Lilly telephoned McCalment and told him to

---

**1.** A letter, labeled "Coaching Documentation" and addressed to McCalment, "focuse[d] on the expectation in order to maintain a level of consistent acceptable performance" and summarized behaviors that McCalment had exhibited that were not consistent with the expectations of a "16 class chemical helper assigned to a chemical manufacturing building." Appellant's Appendix Tab 2 at Petitioner's Exhibit B. The letter also stated, "Mike this coaching session is intended to establish and remedy concerns with your current performance." *Id.*

come in for a meeting the next day. McCalment reported for the meeting, and Lilly terminated him. Lilly informed him that he was being terminated because the mistake he reported on December 2 was in violation of his probation and that his termination was effective December 31, 2002.

On May 27, 2003, McCalment submitted a written grievance to Lilly. McCalment's grievance alleged that he had been improperly placed on probation by Lilly, and as a result, improperly terminated. On June 4, 2003, Lilly responded to McCalment's grievance and refused to honor, consider, or process the grievance.

On November 30, 2004, McCalment filed a complaint against Lilly alleging seven counts: (1) breach of a written contract; (2) breach of an oral contract; (3) promissory estoppel; (4) negligent misrepresentation; (5) intentional misrepresentation, fraud and deceit, and constructive fraud; and (6) two counts of retaliatory discharge. Lilly filed a motion to dismiss McCalment's complaint for failure to state a claim under Ind. Trial Rule 12(B)(6). On May 2, 2005, the trial court held a hearing on Lilly's motion to dismiss. The trial court later issued a written order, which stated, in pertinent part:

## I. *FINDINGS OF FACT*

The following facts are based on the allegations in [McCalment]'s Complaint, which the Court takes as true for purposes of the Motion to Dismiss:

1. In December 2000, Lilly gave [McCalment] a written warning for unacceptable performance. (Complaint ¶¶ 18, 33.)

2. In June 2001, McCalment received further coaching for his performance. (Complaint ¶ 39.)

3. McCalment chose not to protest either action under Lilly's internal grievance procedure. (Complaint ¶¶ 38, 41.)

4. In November 2002, McCalment was placed on probation for six months for unacceptable performance, and the documentation of the probation referenced McCalment's 2000 and 2001 disciplinary actions. (Complaint ¶ 42, Exh. 2C.)

5. On December 2, 2002, McCalment violated the terms of his probation by committing a production error involving contamination of a vat of chemicals, and Lilly discharged him from employment effective December 31, 2002. (Complaint ¶¶ 56, 60.)

6. In May 2004,[2] McCalment attempted to grieve his discharge under the grievance procedure described in Lilly's employee handbook ("handbook"), but Lilly declined to process his grievance. (Complaint ¶¶ 65, 68.)

7. The handbook was explicitly identified as being for employees of Lilly, and the handbook grievance policy made clear that it was available to Lilly employees during their period of employment. (Complaint Exh. 1 cover and pp. 21–22.)

8. The handbook specifically states that employment at Lilly is at will; that the employment relationship can be ended at any time for any or no reason; that the handbook is not any agreement regarding terms of employment that differs from the handbook provisions. (Complaint Exh. 1 p. 1.)

9. The handbook states that disciplinary action is at the complete discretion of Lilly. (Complaint Exh. 1 p. 16.)

**2.** McCalment's complaint states that he filed his grievance in May 2003.

## II. CONCLUSIONS OF LAW

\* \* \* \* \*

### First Count: Breach of Written Contract

3. Under Indiana law, employee handbooks do not constitute unilateral contracts of employment. *Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712, 722 (Ind.1997); *City of Indianapolis v. Byrns,* 745 N.E.2d 312, 317 n. 3 (Ind.Ct.App.2001).

4. Accordingly, Lilly's handbook, which is attached as an exhibit to McCalment's complaint, is not a written contract and [McCalment]'s claim based on the handbook fails as a matter of law.

### Second Count: Breach of Oral Contract

5. Indiana law requires independent consideration, which means a detriment to the employee and a corresponding benefit to the employer, for any assurances that the employee claims converted his employment at will to employment requiring good cause for termination. *Ohio Table Pad Co. [of Indiana, Inc.] v. Hogan,* 424 N.E.2d 144, 145–46 (Ind.Ct.App. 1981).

6. The employee's continued services are legally insufficient to constitute independent consideration. *Orr,* 689 N.E.2d at 719; *see also Brown v. Branch,* 758 N.E.2d 48, 53 (Ind.2001); *Hogan,* 424 N.E.2d at 146.

7. McCalment does not allege that he received any oral promises of employment security from Lilly, nor does he allege any detriment that would constitute legal consideration for any alleged promises, even if made. For both these reasons, his breach of oral contract claim fails as a matter of law.

### Third Count: Promissory Estoppel

8. Under *Jarboe v. Landmark Cmty. Newspapers of Indiana, Inc.,* 644 N.E.2d 118 (Ind.1994), [*reh'g denied,*] an at-will employee cannot recover wrongful discharge damages through a theory of promissory estoppel, because principles of estoppel do not convert at-will employment to employment requiring just cause for discharge.

9. As McCalment is seeking wrongful discharge damages pursuant to his claim of promissory estoppel, which is exactly what *Jarboe* forecloses, he has therefore not stated a viable claim of promissory estoppel.

10. Alternatively, the facts alleged in the Complaint establish that any reliance on McCalment's part was unreasonable as a matter of law.

### Fourth and Fifth Counts: Negligent Misrepresentation, Actual Fraud, Constructive Fraud

11. In order to recover on a theory of fraud, McCalment must demonstrate a material misrepresentation of a past or existing fact. *Wallem v. CLS Indus., Inc.,* 725 N.E.2d 880, 889 (Ind. Ct.App.2000).

12. McCalment's claims that he was falsely promised that his first two disciplinary actions would be expunged within a year constitute claims concerning broken promises to do something in the future and do not support a claim of fraud.

13. McCalment's claim that he was deceived by wording in the handbook into believing Lilly's grievance procedure would be available to him after his employment at Lilly ended fails as a matter of law based on the language of the handbook, which contains no such promise.

*Sixth and Seventh Counts: Retaliation* [3]

\* \* \* \* \*

Based on the foregoing, each and every Complaint in [McCalment]'s claim fails to state a claim upon which relief may be granted.

IT IS THEREFORE ORDERED that the Complaint of [McCalment] against [Lilly] is dismissed in its entirety, with prejudice.

Appellant's Appendix Tab C at 1–5.

 The sole issue is whether the trial court erred when it granted Lilly's motion to dismiss. The standard of review on appeal of a trial court's grant of a motion to dismiss for the failure to state a claim is de novo and requires no deference to the trial court's decision. *Sims v. Beamer*, 757 N.E.2d 1021, 1024 (Ind.Ct. App.2001). The grant or denial of a motion to dismiss turns only on the legal sufficiency of the claim and does not require determinations of fact. *Id.* "A motion to dismiss under Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs of Northwest Indiana*, 845 N.E.2d 130, 134 (Ind.2006). Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred. *Id.*

 A court should accept as true the facts alleged in the complaint, and should only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of the nonmoving party. *Id.* However, a court need not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading. *Id.* We also need not accept as true conclusory, nonfactual assertions or legal conclusions. *Richards & O'Neil, LLP v. Conk*, 774 N.E.2d 540, 547 (Ind.Ct. App.2002). Ind. Trial Rule 8(A) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Although the plaintiff need not set out in precise detail the facts upon which the claim is based, he must still plead the operative facts necessary to set forth an actionable claim. *Trail*, 845 N.E.2d at 135. Under notice pleading, we review the granting of a motion to dismiss for failure to state a claim under a stringent standard and affirm the trial court's grant of the motion only when it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances. *Id.*

On appeal, McCalment argues that the trial court erred when it concluded that he did not have a cause of action for: (A) breach of a written contract; (B) breach of an oral contract; (C) promissory estoppel; (D) misrepresentation; (E) actual fraud; (F) and constructive fraud.

### A. *Breach of Written Contract*

 McCalment's complaint states:

#### A. *First Count: Breach of Written Contract.*

73. The allegations set forth in Paragraph One (1) through Paragraphs Seventy Two (72) are repeated,

---

3. McCalment does not challenge the dismissal of his claims of retaliatory discharge on appeal.

realleged, and incorporated herein by reference.

74. The *Handbook* (Plaintiff's Exhibit One) and oral representations and explanations thereof, unilaterally provided by [Lilly], constitute an enforceable written contract about the terms of Lilly's disciplinary policy and grievance procedure with [McCalment].

75. [Lilly] has failed to perform the terms of the written contract as described herein above.

76. [McCalment] has fully or substantially performed the terms of the written contract.

Appellant's Appendix Tab A at 11–12.

While McCalment's complaint alleged two separate counts for breach of a written contract and breach of an oral contract, each count in the complaint references the Handbook and oral representations. *See* Appellant's Appendix Tab A at 11–12. For the purposes of this appeal, we will address the Handbook in terms of the written contract and the oral representations in terms of the oral contract. Accordingly, we focus on the Handbook for the discussion of McCalment's claim that Lilly breached a written contract.

Both parties point to *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712 (Ind. 1997). In *Orr*, the Indiana Supreme Court addressed the issue of whether an employee handbook served to convert plaintiffs' otherwise at will employment relationship with the employer into an employment relationship that required the employer to terminate them only for good cause. *Orr*, 689 N.E.2d at 717. The court held:

> We are also aware that this Court has not expressly addressed and resolved the question of whether unilateral contracts in the employment context always require adequate independent consideration and whether an employee hand-book can ever constitute a unilateral contract serving to modify the otherwise at-will employment relationship. *See Wior v. Anchor Industries, Inc.*, 669 N.E.2d [172,] 175–78 & n. 6 [ (Ind. 1996) ]; *Streckfus v. Gardenside Terrace Co–Op., Inc.*, 504 N.E.2d [273,] 276 [ (Ind.1987) ]. Nevertheless, we decline plaintiffs' invitation to use this case as a vehicle for resolving these questions.

\* \* \* \* \*

> Even if we were to conclude that an employee handbook, under some circumstances, can constitute a valid unilateral contract in the absence of adequate independent consideration—and we do not do so today—Westminster's Handbook could not constitute such a unilateral contract and, in fact, cannot meet the requirements set forth in *Duldulao v. Saint Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987), upon which plaintiffs primarily rely while urging the Court to create a handbook exception to the employment-at-will doctrine.

*Id.* at 719–720 (internal footnotes omitted). The court concluded:

> We re-affirm the vitality of the employment-at-will doctrine in Indiana and the general rule that adequate independent consideration is necessary to convert an at-will relationship into an employment relationship requiring an employer to discharge an employee for good cause. We decline plaintiffs' invitation to construe employee handbooks as unilateral contracts and to adopt a broad new exception to the at-will doctrine for such handbooks.

*Id.* at 722.

McCalment argues that "[a]lthough the [Indiana] Supreme Court in *Orr* declined to adopt a new exception in Indiana to the

at-will doctrine, it *did not foreclose the possibility.* The fact that the Indiana Supreme Court considered the plaintiffs' arguments based on *Duldulao* is a harbinger of the continued development of employment law in Indiana." Appellant's Brief at 22. McCalment argues that the Handbook meets the *Duldulao* test. We disagree.

In *Orr,* the Indiana Supreme Court held:

Under the *Duldulao* rule, an employee handbook may constitute a unilateral contract and bind the employer if the following three criteria are met: (1) the language of the employee handbook must contain "a promise clear enough that an employee would reasonably believe that an offer had been made;" (2) the employee handbook must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing work after learning of the terms of the employee handbook. *Id.* Here, we need go no further than the first step under *Duldulao.* The Handbook certainly cannot be said to contain a "clear promise" which plaintiffs could reasonably believe constitutes an "offer." Not only is a statement that employees will only be discharged for just or good cause absent from the Handbook, but also the Handbook expressly states that while "in most cases, disciplinary action will begin with an oral warning . . . . if warranted . . . dismissal may occur immediately." (R. at 33.) The Handbook also states that the list of violations "is not intended to be all inclusive," (R. at 83) and emphasizes that major violations in particular "can result in immediate discharge without warning," (R. at 82). Thus, there is no clear promise to follow a progressive disciplinary approach, and, in fact, there are clear statements which provide that Westminster, in appropri-

ate circumstances, may discharge employees without warning. Under such circumstances, Illinois courts interpreting *Duldulao* have concluded that, as a matter of law, the employee handbook does not create enforceable contract rights because the handbook has prescribed no "specific procedures" by "positive and mandatory language." *St. Peters v. Shell Oil Co.,* 77 F.3d 184, 187 (7th Cir.1996); *Lampe v. Swan Corp.,* 212 Ill.App.3d 414, 156 Ill.Dec. 658, 659, 571 N.E.2d 245, 246 (1991).

If this were not enough, the Handbook also contains a disclaimer, which is placed towards the front of the Handbook and which clearly states that the Handbook is not a contract and that its terms can be changed at any time. A similar disclaimer is included in the Personnel Handbook Statement which accompanied, and was referenced in, the Handbook and which Westminster required plaintiffs to sign. Again, even under the *Duldulao* rule, an employee handbook bearing or accompanied by such disclaimers, particularly when the employee signs one of the disclaimers, generally, as a matter of law, does not create a unilateral contract. *See Robinson v. Christopher Greater Area Rural Health Planning Corp.,* 207 Ill.App.3d 1030, 152 Ill.Dec. 891, 895, 566 N.E.2d 768, 772 (1991) (handbook includes disclaimer; stressing that the existence of a contract is a matter of law for the court)[, *appeal denied]; Anders v. Mobil Chemical Co.,* 201 Ill.App.3d 1088, 147 Ill.Dec. 779, 780, 784, 559 N.E.2d 1119, 1120, 1124 (1990) (handbook includes disclaimer)[, *appeal denied]; Bennett v. Evanston Hosp.,* 184 Ill.App.3d 1030, 133 Ill.Dec. 113, 540 N.E.2d 979 (1989) (handbook includes disclaimer; stressing that the existence of a contract is a matter of law for the court); *Chesnick v.*

*Saint Mary of Nazareth Hosp.*, 211 Ill. App.3d 593, 156 Ill.Dec. 69, 570 N.E.2d 545 (1991) (plaintiff signed disclaimer).

The Handbook's vague and general statements about categories of employees, annual performance reviews, and job security, when weighed against the clear and specific language giving Westminster broad discretion in disciplinary matters and the prominent disclaimers, are simply not enough to create an issue of material fact as to whether the Handbook constituted a valid offer under a unilateral contract analysis. *See Lee v. Canuteson*, 214 Ill.App.3d 137, 157 Ill. Dec. 900, 573 N.E.2d 318 (1991)[, *appeal denied*]. As a matter of law, then, such a Handbook could not constitute a valid unilateral contract even if we were to hold that there were no requirement that such a contract be supported by adequate independent consideration.

*Orr*, 689 N.E.2d at 720–721 (footnotes omitted).

Here, the Handbook contained the following language:

> **The handbook does not create a contract of employment, express or implied, guaranteeing employment for any specific duration. Although we hope that your employment relationship with Lilly will be long term, either you or the company may terminate this relationship at any time, for any reason, with or without cause or notice.** No representative, associate, or member of management other than the vice president of human resources has the authority to enter into any agreement with you regarding the terms of your employment that differs from the provisions in this handbook.

> \* \* \* \* \*

> *Disciplinary Actions*

> Since circumstances vary in each case involving possible disciplinary action, each situation is handled on an individual basis. . . . The nature and level of the disciplinary action taken will depend on the nature and severity of the problem, the expectations of the position, and the circumstances involved and is at the complete discretion of the company.

> \* \* \* \* \*

> The company reserves the right to terminate the employment relationship with an employee at any time, for any reason, with or without cause or notice.

Appellant's Appendix Tab 1 at 1–18.

McCalment argues that "Lilly devotes 40 pages of the *Handbook* to explaining [sic] how Lilly will treat its employees fairly based on merit" and "Lilly spends two paragraphs, on one page, under another and neutral heading ('Introduction') to contradictorily and ambiguously say the *Handbook* is 'not a contract of employment' and either Lilly or the employee can end the relationship when they want." Appellant's Reply Brief at 7. However, based on *Orr*'s reaffirming of the validity of the at will doctrine and the disclaimer, we cannot say that the remaining portions of the handbook contained a promise clear enough that an employee would reasonably believe that an offer of other than at will employment had been made. *See, e.g., Orr*, 689 N.E.2d at 720–721.

**B. *Breach of Oral Contract***

◼ In McCalment's complaint, he alleged:

> **B. *Second Count: Breach of Oral Contract.***

> 77. The allegations contained in Paragraph One (1) through Paragraph Seventy Two (72) are repeated,

realleged, and incorporated herein by reference.

78. Hypothetically and in the alternative, the oral representations and the written representations in the *Handbook* by [Lilly] to [McCalment] constitute an enforceable oral contract between said parties about the terms of Lilly's disciplinary policy and grievance procedure.

79. The terms of the oral contract were not negotiated between said parties.

80. The terms of the oral contract were unilaterally prepared by [Lilly], its employees, agents, assigns, and attorneys.

81. The terms of the oral contract could be performed in less than one year.

82. [Lilly] has failed to perform the terms of the oral contract as is more fully described herein above.

Appellant's Appendix Tab A at 12.

■■■■ McCalment argues that he "and Lilly *did* agree that a one year old disciplinary action was purged, and could not be used against him to fire him."[4] Appellant's Brief at 21. The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Rogier v. Am. Testing and Eng'g Corp.*, 734 N.E.2d 606, 614 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* "The existence of a valid contract depends upon mutuality of obligation, i.e., there can be no contract unless both parties are bound." *Marksill Specialties, Inc. v. Barger*, 428 N.E.2d 65, 69 (Ind.Ct.App.1981).

McCalment's complaint states, in pertinent part:

33. A little over two years later, a supervisor for Lilly/Tippecanoe Laboratories, Terral R. Platt, gave Mr. McCalment a written notice that his performance was unacceptable.

34. Mr. McCalment disagreed with the evaluation and so advised Mr. Platt at the time he received it.

35. Mr. Platt stated to Mr. McCalment at the time he received the warning that it would be removed automatically from his file within one (1) year or less.

36. Mr. Platt further advised Mr. McCalment that it could not be used against him after the date it was removed.

37. Mr. Platt was acting in his capacity as a supervisor, employee, and agent for Lilly at the time he made these representations to Mr. McCalment, and at all times relevant herein.

38. In reliance on Mr. Platt's representations described herein above, Mr. McCalment did not exercise his rights under the grievance procedure and GRP.

39. Six months later, on or about 9 June 2001, Mr. McCalment received a coaching from Lilly.

40. Mr. McCalment was again advised that it would be removed from his file and could not be used against him thereafter within one year of the date it was given.

41. In reliance on Lilly's representations described herein above, Mr.

---

4. McCalment also argues that "[t]hey also agreed that he had six (6) months to grieve an adverse employment action to the General Review Board, who could reverse the adverse action at its will." Appellant's Brief at 21. However, a review of McCalment's complaint and the record reveals that McCalment is referring to the Handbook, which has already been addressed. *See supra* Part A.

McCalment did not exercise his rights under the grievance procedure and GRP.

42. Two years after Lilly's written notice, and one year and a half after Lilly's coaching of Mr. McCalment, Lilly placed him on probation on 27 November 2002.

43. The written notice of probation by Lilly of Mr. McCalment was for a period of six months.

44. The written notice of probation was given to Mr. McCalment by Trent Smith.

45. Mr. Smith told Mr. McCalment that part of the justification for his probation was the warning notice of unacceptable performance given him on 8 December 2000, and the coaching on 9 June 2001, coupled with an alleged personal use of a computer, reported to him by Mr. Smith on 27 October 2002.

Appellant's Appendix Tab A at 7–8.

Based on McCalment's complaint, we cannot say that the oral statements made by Lilly constitute a contract between Lilly and McCalment because McCalment was not obligated to perform anything or refrain from doing something. *See, e.g., First Nat. Bank of Logansport v. Logan Mfg. Co., Inc.*, 577 N.E.2d 949, 953 (Ind. 1991) (holding that an oral contract did not exist because there was no mutuality of obligation). Accordingly, we conclude that the trial court did not err by granting Lilly's motion to dismiss on this count.

## C. *Promissory Estoppel*

An employee may avoid the harsh results of the employment at will doctrine by invoking the doctrine of promissory estoppel. *Orr,* 689 N.E.2d at 718. To do so effectively, the employee must demonstrate that (1) the employer made a promise to the employee; (2) the employee relied upon that promise to his detriment; and (3) the promise otherwise fits within the Restatement (Second) of Contracts test for promissory estoppel.[5] *Id.* (citing *Jarboe v. Landmark Community Newspapers of Indiana, Inc.*, 644 N.E.2d 118, 121 (Ind.1994), *reh'g denied* ). "[T]he remedy is limited to damages actually resulting from the detrimental reliance and will not include the benefit of altering the employment status from an at-will relationship to a permanent one which requires just cause for termination." *Jarboe,* 644 N.E.2d at 122.

McCalment's complaint alleged:

### C. *Third Count: Breach of a Unilateral Contract (Promissory Estoppel).*

83. The allegations set forth in Paragraph One (1) through Paragraph Seventy Two (72) and Paragraph Seventy Eight (78) through Eighty Two (82), are repeated, realleged, and incorporated herein by reference.

84. The terms represented by [Lilly] to [McCalment] described herein above were false.

85. The terms were actually known or constructively known to be false by

5. The Indiana Supreme Court cited the Restatement (Second) of Contracts:

The doctrine of promissory estoppel provides:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise. The remedy for breach may be limited as justice requires. *Jarboe,* 644 N.E.2d at 121 (citing Restatement (Second) of Contracts § 90(1) (1981)).

[Lilly] at the time they were made to [McCalment].

86. The terms were represented by [Lilly] to [McCalment] with actual knowledge or constructive knowledge that he would rely on the terms represented.

87. [McCalment] relied on the terms represented by [Lilly].

88. [McCalment] was harmed as a result of his reliance on the terms represented by [Lilly].

Appellant's Appendix Tab A at 13.

Lilly argues that the facts plead in the complaint do not demonstrate detrimental reliance. We agree. Even assuming that McCalment had grieved his first two disciplinary actions, McCalment does not allege that the Board would have reversed the disciplinary actions. Moreover, regardless of the alleged promises regarding the two disciplinary actions, McCalment was an employee at will and could be fired for any reason, including contaminating mixtures of chemicals. Thus, the trial court did not err by granting Lilly's motion to dismiss on this count because McCalment cannot show any detrimental reliance.

### D. Negligent Misrepresentation, Actual Fraud, & Constructive Fraud

■ Detrimental reliance is also an element of negligent misrepresentation, actual fraud, and constructive fraud. *See Craig v. ERA Mark Five Realtors*, 509 N.E.2d 1144, 1147 (Ind.Ct.App.1987) (holding that detrimental reliance is an essential element of both actual and constructive fraud); *Eby v. York–Division, Borg–Warner*, 455 N.E.2d 623, 628–629 (Ind.Ct.App. 1983) (holding that the primary elements of negligent misrepresentation include: "One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information") (citing Restatement (Second) of Torts § 552 (1977)). Because the facts alleged in McCalment's complaint are incapable of showing detrimental reliance, we also conclude that the trial court did not err by granting Lilly's motion to dismiss the counts of negligent misrepresentation, actual fraud, and constructive fraud.

For the foregoing reasons, we affirm the trial court's grant of Lilly's motion to dismiss.

Affirmed.

NAJAM, J., concurs.

ROBB, J., concurs in result with separate opinion.

ROBB, Judge, concurring in result with separate opinion.

I respectfully concur in result.

I agree that the Handbook is not in itself an employment contract for a definite term. The Handbook states that it creates neither an express nor an implied contract of employment, and further states that Lilly reserves the right to terminate the employment relationship "at any time, for any reason, with or without cause or notice." Appellant's Appendix Tab 1, "You and Your Job" at 18. Lilly and McCalment ostensibly were engaged in an employment-at-will relationship. In *Orr*, however, our supreme court recognized three exceptions to the employment-at-will doctrine: 1) adequate independent consideration supporting the employment contract; 2) public policy; and 3) promissory estoppel. 689 N.E.2d at 718.

I believe the Handbook contains sufficient language to constitute a promise that disciplinary matters will be handled at the

lowest level first. The Handbook repeatedly refers to "your supervision," apparently in reference to each employee's manager and personnel representative. The Handbook acknowledges that "the procedures and the use of any particular performance management or evaluation form may vary from area to area." Appellant's Appendix at Tab 1, "You and Your Job" at 13. Disciplinary action is to be handled on an individual basis, and "[y]our supervision will work with you in attempting to correct any aspects of your performance that require correction." *Id.*, "You and Your Job" at 16. Disciplinary action is thus vested in each employee's supervision and the Handbook gives supervision the authority to make commitments to employees. To invoke the doctrine of promissory estoppel in the employment context, the employee must assert and demonstrate that the employer made a promise to the employee; that the employee relied on that promise to his detriment; and that the promise otherwise fits within the Restatement test for promissory estoppel. *Id.* Here, McCalment alleges that he relied upon the promise of lowest-level disciplinary action in foregoing the formal grievance procedure, and I agree.

In December 2000, McCalment received a warning but was told that the warning would be automatically removed from his file within one year or less and that it could not be used against him after it was removed. Although McCalment did not agree with the evaluation that his performance was unacceptable, he relied upon his supervisor's promises regarding the warning and did not exercise his rights under the grievance procedure. In June 2001, McCalment received a "coaching" and was told that the coaching would be removed from his file and could not be used against him after one year. Again, McCalment relied upon this promise from supervision and did not exercise his rights under the grievance procedure.

In November of 2002, McCalment was placed on probation in part because of the December 2000 warning and the June 2001 coaching. According to the promises made by McCalment's supervision at the time each of those incidents occurred, however, both the warning and the coaching should have been removed from his file by this time and neither should have been used against him. McCalment's job duties were also altered, and he was placed on an operation for which he had not been trained. On this operation, McCalment contaminated a mixture of chemicals and was thereafter terminated. The majority notes that "regardless of the alleged promises regarding the two disciplinary actions, McCalment was an employee at will and could be fired for any reason, including contaminating mixtures of chemicals." Op. at 896. The majority concludes, therefore, that McCalment cannot show detrimental reliance. Quite to the contrary. Because of the promises that were made to him, McCalment did not grieve the December 2000 and June 2001 matters. He reasonably relied on the promises that were made to him pursuant to the Handbook that those would no longer be held against him. Moreover, when he learned in November of 2002 that they had not been removed and were being used against him, he lost the opportunity to grieve those previous matters at this time. Thus he not only relied, but relied to his detriment. Although the Handbook is not a contract, Lilly made a bargain with McCalment on which he relied and now can no longer do so.

Although I agree that an employee-at-will can be fired for any reason, our supreme court made it clear in *McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390, 392–94 (Ind.1988), that al-

though an employee at will can be fired for any reason, he cannot be fired for an *improper* reason. Remington Freight Lines *could* have terminated McClanahan for any proper reason, but our supreme court recognized that it did not; it fired him for refusing to break the law and that it *could not* do. Likewise, Lilly could have fired McCalment in December 2000 for unsatisfactory job performance or in December 2002 for contaminating chemicals, but it did not. Lilly fired McCalment, at least in part, based upon two previous disciplinary actions that he had been assured could not be considered in this circumstance. Lilly vested discretion in its management to handle disciplinary matters on a case-by-case basis at the lowest level, and McCalment relied upon that discretion in foregoing the formal grievance procedure available to him. Although we cannot now know what the result of the grievance procedure would have been, we do know that the December 2000 and June 2001 incidents should have been taken off McCalment's record by November 2002, he should not have been put on probation because of those incidents, and he should not have found himself in a job he was not trained to do. Much like the fruit of the poisonous tree doctrine, in which we bar the State from admitting not only evidence directly obtained from an illegal search and seizure, but also all evidence derivatively gained as a result, *see Hanna v. State*, 726 N.E.2d 384, 389 (Ind.Ct.App. 2000), Lilly should not be able to use the employment-at-will doctrine to shield itself from the improper use of previous disciplinary action. In effect, the majority is allowing Lilly to make specific promises which are illusory. That is not the purpose, the intent, or the legal holding of an at-will employment situation.

However, I concur in result because McCalment had an opportunity to grieve when he was placed on probation in November of 2002 prior to his termination. Having failed to grieve at that juncture when he learned that Lilly was not honoring its promise, his reliance became unreasonable and therefore he bears the ensuing consequences.

Although I agree with the majority that the trial court properly dismissed McCalment's complaint pursuant to Trial Rule 12(B)(6), I reach that conclusion via a different analysis than the majority, and I therefore concur in result.